## Davison *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroad companies—Stop, look, listen—Crossings—Contributory negligence—Binding instructions for defendant.*

Where in an action to recover damages for injuries sustained by a pedestrian in consequence of being struck by a locomotive at a crossing, it appeared that, although plaintiff stopped at the first of the three tracks of the crossing, and thereafter went rapidly across to the third track without looking for an approaching train, when she was struck; that the accident occurred on a clear, sunshiny afternoon, and that plaintiff was thoroughly familiar with the surrounding conditions and had an unobstructed view when she came to the third track, binding instructions should have been given for defendant.

Argued Sept. 26, 1916. Appeals, Nos. 4 and 5, Oct. T., 1916, by defendant, from judgments of C. P. Venango Co., Aug. T., 1913, No. 65, on verdicts for plaintiffs, in case of James R. Davison and Ermina S. Davison, his wife, v. The Pennsylvania Railroad Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Trespass to recover damages for personal injuries. Before CRISWELL, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff, James R. Davison, for $950 and for plaintiff, Ermina S. Davison, for $4,000 and judgment thereon.   Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant, in refusing to enter judgment for defendant n. o. v. and instructions to the jury.

*Peter M. Speer,* with him *John L. Nesbit,* for appellant.—The defendant was not shown to be guilty of any negligence in this case: Penna. R. R. Co. v. Lewis, 79 Pa. 33; Titus v. Bradford, Bordell & Kinzua R. R. Co., 136 Pa. 618; Ford v. Anderson, 139 Pa. 261.

Even if defendant was negligent, plaintiff was clearly guilty of contributory negligence: Howvenden v. Penna. R. R. Co., 180 Pa. 244; Keppleman v. Philadelphia & Reading Ry. Co., 190 Pa. 333; Corcoran v. Penna. R. R. Co., 203 Pa. 380; Mankewicz v. Lehigh Val. R. R. Co., 214 Pa. 386; Bistider v. Lehigh Val. R. R. Co., 224 Pa. 615; Craig v. Penna. R. R. Co., 243 Pa. 455; Kinter v. Penna. R. R. Co., 204 Pa. 497; Kraus v. Penna. R. R. Co., 139 Pa. 272; Hughes v. Pres., Mgrs. & Co. of the Del. & Hudson Canal Co., 176 Pa. 254; Baker v. Penna. R. R. Co., 182 Pa. 336; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213; Smith v. Philadelphia & Reading R. R. Co., 160 Pa. 117; Blotz v. Lehigh Val. R. R. Co., 212 Pa. 154; Hamilton v. Central R. R. of N. J., 227 Pa. 137.

*Q. A. Gordon,* with him *Breene & Breene,* for appellees.—The question of defendant's negligence was for the jury: Lehigh Val. R. R. Co. v. Brandtmaier, 113 Pa. 610.

Whether Mrs. Davison was guilty of contributory negligence was also for the jury: 'Miller v. Lehigh Val. R. R. Co., 58 Pa. Superior Ct. 558; Moore v. Penna. R. R. Co., 242 Pa. 541.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8, 1917:

The plaintiffs, James R. Davison and Ermina S., his wife, sued in trespass to recover for personal injuries to the latter; they secured verdicts upon which judgments were entered, and the defendant has appealed.

The accident happened in the town of Emlenton, where Sixth street crosses the defendant's railroad, consisting, at this point, of three tracks. The highway in question extends north and south, and the railroad runs east and west, the second and third tracks thereof, counting from the north, curving somewhat to the northwest from the west side of Sixth street, and the first track intersecting and joining the second at a point about 110 feet west of the west line of this street. At the northwest corner of the railroad crossing there is erected a building called the "Grand Central Hotel," the south line of which extends to the west along the railroad at a distance of eight feet one inch from the first track. The respective tracks are five feet wide, and the space between any two of them is seven feet three and one-half inches, making the distance from the near rail of the first track to the off rail of the last track 29 feet seven inches.

On September 18, 1911, at three o'clock in the afternoon, Mrs. Davison approached the railroad, walking southward on the west side of Sixth street; the roadway was then blocked by a train of box cars on the first track; reaching the crossing, she stood between the Grand Central Hotel and these cars; at this time the train was cut, east of Sixth street, the front section thereof moving to the west, until the locomotive ran upon the second track; when it came to a stop, the last box car of the advance section still stood upon the first track, at a distance estimated by the various witnesess at from six to as much as sixty feet west of the west line of Sixth street; this portion of the train materially obstructed Mrs. Davison's view to the west, but, after listening and looking as best she could, the plaintiff rapidly walked

across the railroad; when almost at the first rail of the third, or last track, she was struck by the extending edge of the pilot of a locomotive, running thereon and hauling a passenger train eastward; she was thrown forward off the track and suffered serious injuries.

The chief ground of negligence relied upon was that, in view of the surrounding circumstances, the passenger train was running at an undue rate of speed. The plaintiffs presented evidence to show that, at the time of the accident, the train was proceeding at a rate of from 25 to 30 miles an hour; while the defendant showed a much lower speed. For present purposes, however, the defendant's negligence may be conceded; we say this because convinced that the evidence depended upon by the plaintiffs clearly shows contributory negligence.

Mrs. Davison was thoroughly familiar with the surrounding conditions, and the peculiarities of the location; the accident happened on a clear, sunshiny afternoon, and, beyond a question of doubt, had this unfortunate woman exercised the care required of an ordinarily prudent person, under the attending circumstances, she must have observed the advancing passenger train immediately after crossing the first track; at that point, she was clear of the obstruction of the standing box cars, and, when advancing, had an ever-increasing prospect to the west; while this view was limited, yet the evidence shows that it was ample to enable her to have seen the passenger train, had she made proper observation; finally, the conclusion that Mrs. Davison failed to take ordinary care, under the circumstances, is made plain by all the testimony in the case.

The injured woman stated that, when the advancing section of the freight train came to a stop, she was standing on the western sidewalk of Sixth street, just north of the first track, where her view to the west was obstructed by the line of box cars; that she looked and listened, as best she could at that point, and when she "didn't hear any train coming and didn't see any," she

"started across the tracks." Plaintiff said further that she was carrying a parasol "to protect her from the sun," which, of course, at the time of the accident, was in the west, the direction from which the train which struck her came; that, since she stopped before entering upon the tracks, she thought she had taken all the precaution required of her; and that, after starting across, she did not "know anything" until struck by the locomotive of the passenger train. The witness did not say she was confused while crossing the tracks, and the whole tenor of the testimony tends to rebut any such idea, yet she not only completely failed to observe the train which subsequently injured her, but she testified that she did not even know what had happened until some time after the accident.

It was conceded that the bell was rung and the whistle sounded as the passenger train neared Sixth street, and, also, that a brakeman, on the rear box car of the advance section of the divided freight train, called to Mrs. Davison just as she entered the first track, to warn her against the approaching train; but she said, "I didn't think, when I had looked up and down the track [referring to her observation before starting across the railroad] and saw nothing and was looking in front and the track was clear, I didn't understand, that this hollering had any reference to me." Immediately after this, in answer to the question, "As a matter of fact, you went right on and didn't pay any attention to it [referring to the verbal warning]?" she replied: "I presume I did. I didn't think I stopped there after I heard the hollering. I stopped before I entered upon the tracks, though. I thought I had taken all the precaution anybody possibly could take."

A man who was standing with Mrs. Davison, and who started across the railroad directly behind her, heard the warning uttered by the railroad employee, and, despite the obstruction on the first track, looking to the west he plainly saw the smoke of the advancing passenger train, "shooting straight up" in the air. This witness said the

locomotive was then 75 to 80 feet from the crossing; which shows that, since by that time Mrs. Davison must, at least, have cleared the first track, the advancing train was directly within her view.   In addition, the witness said he likewise called to Mrs. Davison; but she continued on her way until hit at the near edge of the third track by the "bumper" of the locomotive, which extended out about fourteen inches.   This bystander also observed that Mrs. Davison was walking "reasonably fast," and carrying an "umbrella, to protect her from the sun."

Another witness for the plaintiffs said that, just before the accident, he was at a store to the east of the railroad station, which is situated south of the tracks and directly east of Sixth street.   He testified, "I had some letters to put on the train......and I waited until the train whistled for Emlenton before I left the store"; that, after hearing the whistle, he walked 50 feet or more to reach the station platform; that, as he arrived at this point, the freight train was broken in two, and he saw Mrs. Davison immediately start across the tracks.   Being asked the question, "Where was the passenger train then?" he replied, "The passenger train was very near the station; I don't know exactly how close."   Although this witness expressed the opinion that the plaintiff could not see the latter train, yet his testimony plainly indicates that it must have been visible to her after she cleared the obstructed first track.

Still another of the plaintiffs' witnesses, who saw the passenger train coming and heard its whistle, stated that Mrs. Davison walked "at a good gait" across the tracks, and never stopped until struck; and this witness expressed the opinion that the injured woman could have seen the approaching train had she looked after clearing the first track.

It would serve no useful purpose to go further into the testimony, for we have already stated enough to show beyond any reasonable doubt, that Mrs. Davison was clearly guilty of contributory negligence; crossing the railroad as she did, and, notwithstanding all the

ordinary and extraordinary warnings given her as to the impending danger, walking into an advancing train which must have been clearly within her view had she made adequate observation, were plain carelessness, and particularly is this so when there was more than one place of safety in which she might have stood, in order to avoid the manifest danger which immediately confronted her.

The first assignment, which complains of the refusal to give binding instructions for the defendant, and the third, which complains of the refusal to enter judgment n. o. v., are both sustained; this makes it unnecessary to consider the other specifications of error.

The judgments are reversed and here entered for the defendant.